IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| APPLIANCESMART, INC. : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> CARL DEMATTEO, JR., and : <br> HOME APPLIANCE SOLUTIONS, INC.: <br> : <br> Defendants. : | Case No. 2:18-CV-1729 <br><br> JUDGE ALGENON L. MARBLEY <br><br> Magistrate Judge Vascura |

## ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order. (ECF No. 3). Plaintiff seeks to enjoin Defendant Carl DeMatteo from soliciting any of Plaintiff's employees and to enjoin him from working for Defendant Home Appliance Solutions ("HAS"). Plaintiff also seeks to enjoin HAS from continuing operations at their store located on East Main Street in Reynoldsburg, Ohio. Finally, Plaintiff seeks to enjoin Defendants from using and/or disclosing any confidential or proprietary information belonging to Plaintiff. Having considered the Motion, and the pleadings in support of the Motion, as well as the arguments of the parties at the S.D. Ohio Civ. R. 65.1 Conference at 2:00 PM on December 20, 2018, this Court hereby **GRANTS** the Motion for Temporary Restraining Order.

### II. BACKGROUND

Defendant Carl DeMatteo, Jr. was employed by Plaintiff ApplianceSmart for fourteen years, until May 2018. Appliance Recycling Centers of America ("ARCA"), ApplianceSmart's predecessor-in-interest, initially hired Mr. DeMatteo in February 2004. DeMatteo accepted a

1

position of Ohio Regional Manager, a salary, and various professional benefits in exchange for signing an Employee Disclosure, Confidentiality, and Assignment Agreement ("Agreement"). In 2011, ARCA reorganized, and the retail segment of ARCA – which had operated under the tradename ApplianceSmart® – thereafter operated as ApplianceSmart, Inc., a wholly-owned subsidiary of ARCA. DeMatteo, who had worked for ARCA's retail segment, remained the Ohio Regional Manager for ApplianceSmart stores in Ohio, and his duties did not change at all.

In the Agreement, DeMatteo agreed he would not

> use publish or otherwise disclose, either during or after my employment, any unpublished or proprietary or confidential information or secret relating to the Company or the conduct of its business and operation or to the materials, apparatus, processes, formulae, plans and methods used in the manufacture or marketing of its products or services, or to the Company's products themselves, or to the betterment of or possible new uses for such products or to proprietary information or products of others to which I have access in the course of my employment; and, if I leave the employ of the Company, I will return all Company property and I will not, without its prior written consent, retain or take with me or use any process, formula, drawing, plan, model, software, writing or other record in any way relating to the above.

In addition, the Agreement contained a clause in which DeMatteo promised he would not "compete with the Company in the development, production or sale of any product or service with which I was involved while employed by the Company" for two years after the termination of his employment. DeMatteo further promised he would not solicit the resignation of any employee of Plaintiff.

DeMatteo was terminated from Plaintiff's employment in May 2018. Sometime thereafter, he went to work for HAS. According to Plaintiff, Defendant HAS opened its first Ohio store location in Reynoldsburg, Ohio on December 14, 2018. This HAS location is less than half a mile away from ApplianceSmart's Reynoldsburg location. Plaintiff sent Mr. DeMatteo and HAS each a cease-and-desist letter on December 8, 2018, citing the non-compete

provisions of the Agreement. On December 10, 2018, the Director of Human Resources and Compliance for HAS acknowledged receipt of the letter.

Plaintiff alleges DeMatteo is violating the Agreement by working for another B-Line Appliance retailer within two years of his termination from Plaintiff's employment. Plaintiff also alleges DeMatteo breached the Agreement by soliciting the resignation of other ApplianceSmart employees. Because DeMatteo's position with HAS will inevitably result in the disclosure of trade secrets and because of his breaches of the non-compete agreement he signed with ApplianceSmart, Plaintiff filed this Motion on December 18, 2018.

### III. LAW AND ANALYSIS

A Temporary Restraining Order ("TRO") is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 U.S. Dist. LEXIS 61151, at *10 (S.D. Ohio Apr. 21, 2017). Federal Rule of Civil Procedure 65(b) requires a Court to examine, on application for a temporary restraining order, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Therefore, although some courts would examine the four factors required for issuance of a preliminary injunction, a focus on "[t]he irreparability and immediacy of harm" is all that is required. *See, e.g., Women's Med. Prof'l Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1–2 (S.D. Ohio Feb. 27, 2008) (Marbley, J.) (focusing on the irreparability and immediacy of harm before ruling on TRO).

### A. Irreparability of Harm

Plaintiff has met its burden of showing irreparability of harm absent a Temporary Restraining Order. Harm is irreparable if it "is not fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The law recognizes the misappropriation of trade secrets as an irreparable loss for which monetary damages would not suffice to make a party complete. *Basicomputer Corp.*, 973 F.2d at 513. There is a similar understanding of the loss of customer lists, strategic plans, and other corporate work product. At the Rule 65.1 Conference, although Defendants argued that Mr. DeMatteo has no documents or other mechanism by which to furnish trade secrets to his new employer, this does not mitigate the irreparability analysis. DeMatteo still has, buried in the portals of his mind, many of the trade secrets and other proprietary information gained from his many years at ApplianceSmart. All of the information can be instantaneously accessed. Plaintiff has thus demonstrated irreparability of harm.

### B. Immediacy of Harm

Plaintiff has also met its burden of demonstrating immediacy of harm. The HAS location in question is newly opened as of approximately December 7, 2018. Although Mr. DeMatteo has been employed by HAS since about August 2018, Plaintiff did not learn of his hire then. Once Plaintiff learned of HAS's opening and of Mr. DeMatteo's involvement, it sent cease-and-desist letters in an effort to address some of the potential harm at an earlier stage. Plaintiff has thus demonstrated immediacy of harm.

### IV. CONCLUSION

Because Plaintiff has met the immediacy and irreparability requirements of Rule 65(b), this Court grants the TRO, with the following conditions during the pendency of the TRO:

1. Mr. DeMatteo is to be placed on administrative leave with pay, inclusive of benefits and health insurance.
2. Mr. DeMatteo shall be prohibited from providing the following information to anyone at HAS or affiliated with HAS in any capacity: Mr. DeMatteo shall not introduce anyone to a vendor or manufacturer; he shall not provide any industry information or advice in negotiating with any HAS vendor; he cannot provide any information or advice to any HAS employee or anyone affiliated with HAS as to any marketing idea, and he cannot provide HAS or anyone affiliated with HAS or any HAS employee with any information or advice as to expansion strategy.
3. Mr. DeMatteo shall not be involved in any purchasing decisions; he shall not meet with any manufacturers; he shall not give input and/or have any decision-making authority regarding any location for the store or the next store if that decision is to be made during the pendency of this Order. Mr. DeMatteo shall not be involved in any marketing decisions for HAS; he shall not create any documents regarding sales, forecasts, or trends; he shall not set any financial goals or sales targets; he shall not participate in any decisions regarding marketing or expansion strategy.
4. Mr. DeMatteo shall not solicit employees of ApplianceSmart within the meaning of the Agreement and he shall not entice other employees to work for HAS.
5. The Plaintiff must post a bond with the Clerk of this Court of $3525.00 by close of business December 21, 2018.

The Preliminary Injunction hearing will be held on **Thursday, January 3, 2019 at 9:30 a.m.** before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Chambers Room 331. The parties are to contact Chambers for the

location of the courtroom. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

Plaintiff requested a Preliminary Injunction. (ECF No. 3). The Defendants have already submitted a memorandum contra. (ECF No. 6). The Plaintiff must file its Reply to the Defendants' Response by **December 27, 2018**. The focus of the parties' briefing should be the four factors the Court will consider in determining whether a Preliminary Injunction is warranted: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. Plaintiff's Reply brief shall not exceed ten (10) pages.

The Court shall handle all discovery disputes for the purposes of the Preliminary Injunction briefing.

The parties, or a party, in its opening Preliminary Injunction brief, may move to consolidate the Preliminary Injunction hearing with the trial on the merits. If the motion to consolidate is not raised in a party's opening brief, it will be considered waived.

An appendix outlining the trial procedures to be followed at the Preliminary Injunction hearing follows this Order.

**IT IS SO ORDERED.**

                                                 _s/Algenon L. Marbley_
                                                 **ALGENON L. MARBLEY**
                                                 **UNITED STATES DISTRICT JUDGE**

**DATED: December 21, 2018**

# APPENDIX

## I. TRIAL PROCEDURES

### Counsel Tables

Plaintiff will occupy counsel table next to the jury box. Defendant will occupy counsel table across from Plaintiff and, to the extent necessary, the pews in the gallery.

### Appearances

Counsel will enter their appearance with the Court Reporter and the Courtroom Deputy Clerk before the start of the opening session of the hearing.

### Addresses By Counsel

Counsel will address the Court in the following manner:

    (a)    All addresses to the Court will be made from the lectern facing the Court.

    (b)    Counsel shall stand when addressing the Court for any reason.

### Objections

Counsel will stand when making an objection and will make the objection directly and only to the Court.

When objecting, state only that you are objecting and the succinct legal basis for your objection. Objections shall not be used for the purpose of making speeches, repeating testimony, or to attempt to guide a witness.

Argument upon an objection will not be heard unless permission is given or argument is requested by the Court. Either counsel may request a bench conference.

### Decorum

Colloquy, or argument between counsel will not be permitted. All remarks shall be addressed to the Court.

Counsel shall maintain a professional and dignified atmosphere throughout the hearing.

During the hearing, counsel shall not exhibit familiarity with witnesses or opposing counsel and shall avoid the use of first names.

During opening statements and final arguments, all persons at counsel table shall remain seated and be respectful so as not to divert the attention of the Court.

Do not ask the Court Reporter to mark testimony. All requests for re-reading of questions or answers shall be addressed to the Court.

### Demonstrative Evidence

If any sketches, models, diagrams, or other demonstrative evidence of any kind will be used during the proceeding, they must be exhibited to opposing counsel two days prior to the hearing. Objections to the same must be submitted to the Court prior to the commencement of the hearing. Demonstrative evidence prepared solely for the purpose of final argument shall be displayed to opposing counsel at the earliest possible time but in no event later than one-half hour before the commencement of the arguments.

Counsel must supply his/her own easel, flip charts, etc. for the hearing.

### Exhibits

Counsel will assemble and mark all exhibits and deliver them to the courtroom deputy prior to the commencement of the hearing. Plaintiff's exhibits will bear the letter prefix P followed by Arabic numerals and Defendant's exhibits will bear the prefix D followed by Arabic numerals.

Counsel should keep a list of all exhibits and should supply the Court, courtroom deputy and opposing counsel with a copy of the same.

Each counsel is responsible for any exhibits secured from the courtroom deputy. At the end of each hearing session, all exhibits shall be returned to the courtroom deputy.

The parties shall use three-ring tabbed notebooks for their exhibits which will be submitted two (2) days before the hearing. The parties shall provide one (1) copy of their tabbed exhibit notebook(s) to opposing counsel, and three (3) copies to the Court—one each for the Judge, the law clerk, and the courtroom deputy (for use at the witness stand).

Exhibits which are produced for the first time during the hearing, as in the case of exhibits used for impeachment, shall be tendered to the courtroom deputy for marking and then displayed to opposing counsel.

### Sanctions

The parties and counsel shall comply fully and literally with this pre-hearing order. The Court will consider the imposition of appropriate sanctions in the event of non-compliance, including monetary sanctions, the dismissal of claims or defenses, or the exclusion of evidence. Fed. R. Civ. P. 16(f).

This order supersedes all previous orders in this case to the extent previous orders are inconsistent with this order.

The parties shall address questions about this Order to the Court's Law Clerk, Hannah Solomon-Strauss, at (614) 719-3262, by way of a telephone conference with counsel for all parties participating, or with fewer than all counsel participating with express permission of non-participating counsel. Or, the parties may contact Ms. Solomon-Strauss at hannah_solomon-strauss@ohsd.uscourts.gov, by way of email with counsel for all parties carbon-copied, or with fewer than all counsel carbon-copied with express permission of non-participating counsel.